UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK BEESLEY et al.,<br><br>    Plaintiff and Counterclaim Defendants,<br><br>v.<br><br>GARY R. BRINTON, et al.,<br><br>    Defendants and Counterclaim Plaintiffs | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND MOTION TO STAY<br><br>Case No. 2:17-cv-00735-JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is defendants and counterclaim plaintiffs Gary R. Brinton and ZibalStar LLC's (collectively, the defendants') motion for summary judgment, ECF No. 412, and motion to stay, ECF No. 411. The court DENIES both motions.[1]

## BACKGROUND

This case arises from a dispute over performance due under a settlement agreement dated September 13, 2016 (Settlement Agreement). Plaintiff and counterclaim defendant Mark Beesley, individually and on behalf of the Mark Beesley Trust (Trust), alleges the defendants failed to make a payment of $377,000 to Beesley on December 31, 2016.[2] The defendants contend they were not obligated to make the payment based on Beesley's purported prior material breach of the Settlement Agreement. On August 22, 2023, the defendants filed the present motion for summary

---

[1] The defendants requested a hearing on the motions. The court has determined that a hearing is not necessary and decides the motions on the briefs. *See* DUCivR 7-1(g).

[2] Specifically, Beesley asserts ZibalStar owed the payment under the terms of the Settlement Agreement and Brinton, under the terms of a separate personal-guarantee agreement, became responsible to make the same payment when ZibalStar failed to make it.

judgment challenging allegations and evidence underpinning diversity jurisdiction, which implicates the court's power to hear this case.

## ANALYSIS

I.     MOTION FOR SUMMARY JUDGMENT

The defendants argue that Beesley and the Trust failed to establish the court's subject-matter jurisdiction under the diversity statute, 28 U.S.C. § 1332(a).  Under that statute, "Congress has authorized the federal district courts to exercise jurisdiction over certain cases between citizens of different states . . . [so long as] no plaintiff and no defendant are citizens of the same state—that is, there must be 'complete diversity between all plaintiffs and all defendants.'"  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).  The court first determines which individual or individuals are relevant to determine the Trust's citizenship and then examines the allegations and evidence pertaining to all relevant parties' citizenship.

A.     *The Trust's Citizenship*

The defendants contend that the Trust's citizenship must be determined by reference to each Trust "member."  ECF No. 412 at 14.  The court disagrees.  Undoubtedly, the citizenship of a business trust, bringing suit as an entity, is determined by the examining the citizenship of its "members," which includes all individuals holding a beneficial interest.  *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016).[3]  In *Americold*, the Supreme Court reasoned that the trust at issue was a business trust bringing suit as an entity because the state statutes

---

[3] As the defendants correctly point out, the critical distinction here is not merely whether a trust is labelled a "business" trust.  Rather, the court must determine whether a given trust constitutes an unincorporated entity suing on its own behalf, or whether it instead constitutes a fiduciary relationship represented by a trustee in the trustee's representative capacity.  *See Americold* at 383.

2

applicable to it provided the trust with two important features. *Id.* at 382–83. First the statutes empowered the trust to sue or be sued in its own name. *Id.* at 383. Second, rather than naming donative beneficiaries like a traditional trust, the *Americold* trust issued shares evidencing ownership of its various members. *Id.* at 382. Notwithstanding the outcome in *Americold*, the Supreme Court expressly refrained from altering the traditional approach to determining citizenship of a traditional trust, bringing suit through its trustee(s). *Id.* at 383. In such a case the court need only examine the trustees' citizenship.[4] *Id.*

Here, the Trust is a traditional trust, bringing suit through its sole trustee, Beesley. The caption of the Complaint expressly provides that Beesley is the party plaintiff in his individual and representative capacity. ECF No. 2 at 1. Beyond the Complaint's characterization, the law governing the Trust likewise indicates Beesley is bringing suit on behalf of the Trust as its sole trustee.

Turning first to the law governing the Trust, the parties do not cite any Utah law providing the Trust power to bring suit in its own name or issue beneficial ownership interests like the trust in *Americold*. The court's own review of the applicable law likewise reveals no such powers. Rather, the Trust is a revocable trust, which Utah law analogizes to a will. *See,* UTAH CODE

---

[4] The Supreme Court discussed the historical reasons for this approach:

> Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.

*Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (citations omitted).

3

§ 75-7-604 ("The capacity required to create, amend, revoke, or add property to a revocable trust, or to direct the actions of the trustee of a revocable trust, is the same as that required to make a will.").  The Utah Supreme Court has previously found the Utah Legislature intended "to treat revocable living trusts as will equivalents" based on its adoption of the Uniform Trust Code. *Patterson v. Patterson*, 266 P.3d 828, 837 (Utah 2011).  While *Patterson* does not expressly cite the Uniform Law Comments, those Comments echo this finding: "The revocable trust is used primarily as a will substitute, with its key provision being the determination of the persons to receive the trust property upon the settlor's death." UNIF. TR. CODE § 601, Cmt. (Unif. L. Cmm'n 2023).  Thus, the Trust appears to be an estate-planning device that sets up a fiduciary relationship, rather than some form of artificial entity that can sue in its own name or issue shares evidencing ownership.[5]  Accordingly, the court will determine the Trust's citizenship by reference to its sole trustee, Beesley.[6]

### B. Beesley's Citizenship

The defendants challenge the sufficiency of Beesley's allegations and evidence of his North Carolina citizenship.  It is undisputed that Brinton and ZibalStar were both Utah citizens when this action commenced.  *See* ECF No. 47 at 1–2; ECF No. 48 at 2; ECF No. 409.  The court's review of the record reveals Beesley has consistently alleged and testified that he was a citizen or resident of North Carolina at the time he filed this action.  When examining federal diversity

---

[5] Additionally, the court's own review of the Trust instrument reveals no provision that makes the Trust analogous to a business trust or other artificial entity.  *See* ECF No. 416 at Ex. 1.

[6] Given this conclusion, the court need not consider whether the Trust was a dispensable party under Rule 21.  *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) ("A district court can dismiss a dispensable nondiverse party pursuant to Fed. R. Civ. P. 21 to cure a jurisdictional defect at any point in the litigation, including after judgment has entered.")

jurisdiction, an individual's state citizenship is equivalent to his or her domicile. *Smith v. Cummings*, 445 F.3d 1254, 1259–60 (10th Cir. 2006) (citing *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983)). "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). Also, as the defendants point out, Beesley bears the burden here because "a party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence." *Id.*

Here, Beesley has consistently alleged that he is domiciled in North Carolina and thus a citizen of that state. The Complaint, in all its variations, alleges Beesley "is an individual domiciled in the state of North Carolina and so is a citizen of the state of North Carolina." ECF No. 2 at 1; ECF No. 32 at 1; ECF No. 48 at 2. While Defendants contend Beesley must provide more than these allegations, they offer no case in support. As mentioned earlier, the Tenth Circuit has held allegations of an individual's domicile sufficient to establish their citizenship for diversity purposes. *See, e.g.*, *Smith*, 445 F.3d at 1259–60. Defendants do not clearly explain why the allegations in Beesley's complaint fail to meet this standard. Nonetheless, in an abundance of caution, the court will examine the record evidence pertaining to Beesley's domicile.

The evidence in the record, while not overwhelming, likewise shows that Beesley moved to North Carolina in 2014 and has remained there since, including on the date this case was filed, July 3, 2017. While some of these references relate to Beesley's "residence instead of his domicile and citizenship . . . this is not fatal to jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). "Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile." *Id.* Beesley testified in his deposition that he has lived

5

in North Carolina since 2014 and remained there at least until the time of his deposition in 2020. Beesley Dep. 4:15–18, ECF No. 415, Ex. 1.  This testimony indicates Beesley resided in North Carolina on the date this action was filed, July 3, 2017.  Beesley also filed a declaration in March 2020 indicating he moved from Utah to North Carolina in 2014 and was still a resident of North Carolina in March 2020.  ECF No. 146 at 1, 3.  Beesley also listed his address in North Carolina on correspondence dated June 1, 2017, which Brinton and ZibalStar filed in support of their earlier motions for summary judgment.  ECF No. 133, Ex. 28.  This modest amount of evidence provides sufficient proof here because Defendants do not point to any evidence to suggest Beesley's domicile, or even his residence, existed somewhere other than North Carolina on July 3, 2017. Accordingly, given the only evidence in the record indicates Beesley resided in North Carolina (and because evidence of residence is prima facia evidence of domicile) and the lack of any evidence to the contrary, the court finds Beesley has established he was domiciled in, and thus a citizen of, North Carolina at the time this action was filed.  As mentioned above, Brinton and ZibalStar were citizens of Utah.  Thus, the court finds the parties are completely diverse for purposes of 28 U.S.C. § 1332(a).

    C.    *Rule 7.1(a)*

Finally, the defendants assert Beesley and the Trust violated Rule 7.1(a)(2) by not disclosing their citizenship.  The text of Rule 7.1(a)(2) states:

> In an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must, unless the court orders otherwise, file a disclosure statement. The statement must name--and identify the citizenship of--every individual or entity whose citizenship is attributed to that party or intervenor:
>     **(A)** when the action is filed in or removed to federal court, and
>     **(B)** when any later event occurs that could affect the court's jurisdiction under § 1332(a).

Fed. R. Civ. P. 7.1(a)(2).

The trouble with Defendants' argument is one of timing. Under the circumstance of this case, reasonable minds could differ about whether this provision of Rule 7.1 was ever triggered. The cited provision was not added to Rule 7.1 until December 2022. The subsection governing timing instructs parties to provide disclosure when they "first" appear or otherwise make a request of the court and to supplement that disclosure if and when the required information changes. FED. R. CIV. P. 7.1(b). Beesley first appeared, individually and as trustee, by filing the Complaint on July 3, 2017, over five years before the provision at issue was added to Rule 7.1. While a cautious party may do well to file when the new rule takes effect, neither party did so here. Even Brinton and ZibalStar did not file a disclosure until August 16, 2023, the week preceding their filing the present motions. Accordingly, the court finds Beesley has not materially violated Rule 7.1. Nonetheless, in the interest of a more complete record, the court instructs Beesley to file a Rule 7.1(a) disclosure within ten days of the filing of this order.

## II. THE MOTION TO STAY

The defendants' motion to stay requested the court decide their motion for summary judgment before proceeding on the merits of the case.[7] That request is now moot given this decision on the motion for summary judgment.

## III. BRIEFING ON SUMMARY JUDGMENT AND THE COURT'S STANDING ORDER

Judge Jenkins presided over this case until it was reassigned on November 20, 2023. On October 20, 2020, Judge Jenkins denied three summary-judgment motions filed by the defendants.

---

[7] ECF No. 411.

Subsequently, during a final pretrial conference on June 26, 2023, Judge Jenkins indicated the court would enter summary judgment against the defendants, though no written order ever issued. Given the reassignment of this case, the undersigned will benefit from further briefing on whether summary judgment is appropriate. Accordingly, the court grants Beesley leave to file a motion for summary judgment within 45 days of this order. If Beesley files a motion within this period of time, the parties shall brief the motion in accordance with the court's local rules. If Beesley does not file a motion for summary judgment, the court will set a scheduling conference to set a trial date.

Notwithstanding this request for additional briefing, the court is not altering other prior orders in the case, including those indicating: recitals are binding on all who signed the Settlement Agreement, which includes both parties here, *see* Zoom Misc. Hr'g at 57:21–23 (Sept. 8, 2021) (ECF No. 388); interests in limited liability companies are personal property, not real property, even if the limited liability company owns real property, *see* Tr. Pretrial Conf., Feb. 2, 2021, 48:13–52:13; and the Trust, or more accurately, Beesley as trustee, may assert a defense notwithstanding Defendants' objection that the Trust did not make disclosures separate from Beesley's individual disclosures, *see* Tr. Pretrial Conf., Feb. 2, 2021, 42:15–24.

Finally, the court notes that counsel for Brinton and ZibalStar have not acknowledged the court's Standing Order in Civil Cases, filed in this case on November 21, 2023. ECF No. 431. Counsel for Brinton and ZibalStar must do so before filing any other document in this case. Failure to do so may result in the court striking Briton and ZibalStar's filings.

**ORDER**

For the above-stated reasons, the court denies Brinton and ZibalStar's motion for summary judgment, ECF No. 412, and motion to stay, ECF No. 411.

The court FURTHER ORDERS Beesley to file a disclosure pursuant to Rule 7.1(a) within ten days of this order.

The court FURTHER ORDERS that Beesley may file a motion for summary judgment within 45 days of this order.

The court FURTHER ORDERS counsel for Brinton and ZibalStar to acknowledge the court's standing order, as previously instructed.

Dated February 22, 2024.

BY THE COURT:

Jill N. Parrish
United States District Judge