IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARK BEESLEY, individually and in his capacity as Trustee for and on behalf of the MARK BEESLEY TRUST,<br><br>          Plaintiff,<br><br>v.<br><br>GARY R. BRINTON, an individual, and ZIBALSTAR, L.C., a Utah limited liability company,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00735-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Mark Beesley's Motion for Summary Judgment.[1] Having reviewed the Motion, the relevant briefing, and the case's procedural history, the court determines it cannot disrupt Judge Jenkins' final decree resolving all issues in favor of Plaintiff. As such, Plaintiff's outstanding Motion for Summary Judgment is DENIED AS MOOT.[2]

## BACKGROUND

This case arises out of an alleged breach of a settlement agreement (the Agreement) entered into between Plaintiff and Defendant ZibalStar, L.C. (ZibalStar).[3] ZibalStar's obligations under the Agreement were guaranteed by Defendant Brinton pursuant to a separate, guaranty agreement (the Guaranty Agreement).[4] Plaintiff brought the present action in July

---

[1] Dkt. 452, *Motion for Summary Judgment* (*Motion*).

[2] Pursuant to DUCivR 7-1(g), the court determines oral argument is unnecessary and will decide the Motion based upon the parties' written memoranda.

[3] *See* Dkt. 47, *Second Amended Complaint* ¶¶ 10–22.

[4] *Id.*

1

2017, asserting claims for breach of the Agreement against Defendant ZibalStar and breach of the Guarantee Agreement against Defendant Brinton.[5]  Specifically, Plaintiff sought to recover the unpaid, final payment amount of $377,000 plus interest of 15% per annum until the full debt was paid, as provided in the Agreement.[6]  Defendants admitted ZibalStar never made this final payment, as required by the contract,[7] and Defendants only remaining defense to this nonpayment at the time of a June 2023 final pretrial conference was based on a theory of prior material breach.[8]

Judge Jenkins presided over this case until it was reassigned on November 20, 2023.[9]  Over the course of several years, Judge Jenkins held multiple final pretrial conferences where he attempted to discern whether any legitimate issues of fact remained in the case to refer to a factfinder.[10]  During the penultimate of these pretrial conferences, in April 2023, Judge Jenkins warned counsel for Defendants that he was prepared to issue a ruling at the proximate pretrial conference if they did not present him with something to try.  Specifically, Judge Jenkins cautioned:

> I want to see if there is anything left to try.  With the fourth, but it is really the fifth suggested form of pretrial order, we are interested in specifics.  It is uncontested that there was no payment on the 31st day of December of 2016.  There is no contest as to the fact that somebody complained about that and pointed out that it wasn't paid. . . . I'm interested in specifics.  I'm interested in the actual provision in the settlement agreement

---

[5] Dkt. 2, *Complaint* at 3–4.

[6] *Motion* at 1.

[7] *See, e.g.*, Dkt. 451-2, *Transcript of Motion Hearing Before the Honorable Judge Bruce S. Jenkins* (*June Final Pretrial Conference*) at 6:11–7:2, 28:6–13, 59:2–5 ("Payments have been made, Judge, just the last payment hasn't been made.  I think we agree on that.").

[8] Dkt. 451-4, *January 12, 2023 Miscellaneous Hearing* at 13:4–9 ("Well, the issues are pretty simple in my mind.  It's a contract case.  It's a question of breach, who breached first.  That's it.  And with that in mind, let's fix a pretrial date, if that's convenient for everybody.").

[9] Dkt. 429, *Docket Text Order*.

[10] *See* Dkt. 375, *Minutes of The United States District Court for the District of Utah*; Dkt. 386, *Minutes of The United States District Court for the District of Utah*; Dkt. 397, *Minutes of The United States District Court for the District of Utah*; Dkt. 403, *Minutes of The United States District Court for the District of Utah*.

that you say relieves you of the responsibility of having to pay the 377 plus interest. That is a very important question, a very important question. . . . I think we're wasting our time, quite frankly, absent a specific case that deals with inducing, particularly when you have sophisticated people and an integration clause, an opportunity to sign or not sign, and an expression as to disavowing what others may have said prior to the time that the document was executed. If you have a legitimate excuse, then lay it out item by item, lay it out provision by provision, time, place, persons. . . . We'll deal with what we have. Item by item, specific by specific, provision by provision, and if there is something to try we'll try it. If there is nothing to try, we'll rule. So be warned. Be warned.[11]

At the next (and final) pretrial conference in June 2023, Judge Jenkins enforced his prior warning. After hearing from the parties and asking repeatedly whether a legitimate factual basis for Defendants' defenses existed, he issued the following oral ruling:

I've been trying to nail down what it was that we could legitimately refer to a factfinder. And I find there's not anything that I can identify with particularity that I can, in good conscience, refer to a factfinder. I think the issues, the facts, the acknowledged facts, the exhibits, and particularly the text of the settlement agreement, justify my finding the issues in favor of the plaintiff and against the defendants; namely, the unpaid sum of $377,000, along with, as pointed out, $155 a day times the days. The question of attorneys' fees and the quantum of attorneys' fees is for another day. . . . [Y]ou're entitled to costs, but if you claim attorneys' fees, you should file an appropriate application . . . I think that takes care of the matter.[12]

Fifty-seven days later, on August 22, 2023, Defendants filed a Motion for Summary Judgment challenging the court's subject matter jurisdiction.[13] Unfortunately, Judge Jenkins passed away shortly thereafter in November 2023. He passed away before resolving Defendants' Motion and before issuing a separate, written judgment pursuant to Federal Rule of Civil Procedure 58(a). The case was then transferred to Judge Parrish, who denied Defendants' Motion challenging the court's subject matter jurisdiction and invited the parties to submit additional briefing regarding whether summary judgment in favor of Plaintiff was appropriate.[14]

---

[11] Dkt. 451-19, *April 20, 2023 Final Pretrial Conference* at 58:24–60:9.

[12] *June Final Pretrial Conference* at 77:24–78:25.

[13] Dkt. 412, *Motion for Summary Judgment Dismissal Based on Lack of Subject Matter Jurisdiction*.

[14] *See* Dkt. 439, *Memorandum Decision and Order Denying Motion for Summary Judgment and Motion to Stay*.

Shortly thereafter, the case was transferred to the undersigned.  Plaintiff's Motion is fully briefed and ripe for review.[15]

## ANALYSIS

The need to respect finality of judgments has been described as "obvious" by the Tenth Circuit.[16]  Indeed, "once the district court enters judgment, the public gains a strong interest in protecting the finality of judgments."[17]  Moreover, the law of the case doctrine prohibits a successor judge from reviewing a prior, final decree issued by another judge of concurrent jurisdiction as a "successor judge can reconsider prior rulings only if the previous judge could have done so,"[18] and only "order[s] short of a final decree [are] subject to reopening at the discretion of the district judge."[19]  Courts depart from this doctrine only in three, "exceptionally narrow circumstances": when the evidence in a subsequent trial is substantially different, when controlling authority has subsequently made a contrary decision of the law applicable to such issues, or when the decision was clearly erroneous and would work a manifest injustice.[20]  Only the third exception is potentially relevant to the present dispute.  Thus, the undersigned is required to respect and enforce Judge Jenkins' ruling at the June pretrial conference if (1) it was not clearly erroneous, and (2) it constituted a "final decree."

---

[15] *Motion*; Dkt. 468, *[Corrected ] Defendants' Response to Plaintiff Mark Beesley's MSJ* (*Opposition*); Dkt. 482, *Mark Beesley's Reply Memorandum in Further Support of (Doc. No. 452) Motion for Summary Judgment* (*Reply*).

[16] *See Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979).

[17] *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation omitted).

[18] *Id.* at 925, 930 n.2 (citations omitted).

[19] *Elephant Butte Irr. Dist. of N.M. v. U.S. Dept. of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008) (citation omitted); *see also Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012) ("The law of the case doctrine does not apply 'to rulings revisited prior to entry of a final judgment.'" (citation omitted)); *Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (explaining how the law of the case doctrine does not typically bind a successor judge to follow interlocutory rulings in the same case issued by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine).

[20] *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 11334, 1140 (10th Cir. 2009) (citation omitted).

4

First, Judge Jenkins' decision to find all issues in favor of Plaintiff was not clearly erroneous. As the Tenth Circuit has observed, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."[21] Nothing about Judge Jenkins' substantive decision emits such a stench, and his ruling appears to be procedurally authorized. Indeed, the Tenth Circuit recognizes a district court's ability to grant summary judgment *sua sponte*, provided the losing party was on notice that he had to come forward with all of his evidence at the time of the ruling.[22] The Federal Rules of Civil Procedure also enable district courts to use a pretrial conference to formulate and simplify the issues to be heard at trial and eliminate frivolous claims or defenses.[23] Judge Jenkins' ruling in favor of Plaintiff at the June 2023 pretrial conference was permissible as he clearly provided notice to Defendants at the earlier April 2023 pretrial conference that he was prepared to rule at the next pretrial conference if Defendants did not come forward with sufficient facts supporting their defenses.[24] Defendants failed to do so, and at the June 2023 pretrial conference, Judge Jenkins enforced his prior warning and granted summary judgment on all issues in favor of Plaintiff.[25]

Second, Judge Jenkins' decision constituted a final decree. In the Tenth Circuit, a judgment is considered "substantively final" when "the district court has disposed of all claims

---

[21] *U.S. v. Robinson*, 146 F. App'x 255, 259 (10th Cir. 2005) (unpublished) (quoting *Piraino v. Int'l Orientation Res., Inc.*, 137 F.3d 987, 989 (7th Cir.1998)).

[22] *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) (citations omitted).

[23] *See* Fed. R. Civ. P. 16(c)(2)(A).

[24] *April 20, 2023 Final Pretrial Conference* at 58:24–60:9.

[25] *June Final Pretrial Conference* at 77:24–78:25.

5

against all parties, leaving nothing for the district court to do beyond ministerial tasks."[26] A substantive final judgment becomes "technically final . . . only when it is entered in a separate document or after 150 days have elapsed since it was entered in the civil docket."[27] Federal courts treat both substantive and technical final judgments as final decrees.[28]

In light of these standards, the court will not and cannot disturb the earlier, final decree issued by Judge Jenkins in this case.[29] His oral ruling at the final pretrial conference resolved all issues in favor of Plaintiff, leaving nothing for him to do beyond ministerial tasks.[30] He also resolved the issue of prejudgment interest in Plaintiff's favor,[31] another hallmark of a typical

---

[26] *See Murphy v. Schaible*, 108 F.4th 1257, 1271–72 (10th Cir. 2024) (citations omitted); *see also Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 957 (10th Cir. 2021) ("In general, federal circuit courts have jurisdiction to review only 'final decisions' of district courts . . . [and a] final decision must dispose of all claims by all parties . . . ." (citations omitted)); *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, No. 2:11-CV-496, 2015 WL 13640266, at *2 (D. Utah Dec. 2, 2015) ("The court's September 17, 2015 Order is a final judgment because it fully and finally resolved all of PPPC's claims against HCG Platinum and the Third-Party Defendants.").

[27] *Murphy*, 108 F.4th at 1272 (citing Fed. R. Civ. P. 58(c)(2)).

[28] *See, e.g.*, *3A Composites USA, Inc. v. United Indus.*, No. 5:16-CV-5017, 2017 WL 4536118, at *2 (W.D. Ark. Oct. 10, 2017) ("[T]he Court's failure to comply with Rule 58(a)'s separate-document requirement did not make its final dismissal order in the prior case any less 'final' or appealable. . . . Ultimately, then, whether an order is a 'final order' is a question of substance not form. And substantively speaking, . . . this Court believes its final order of dismissal in the prior case clearly and unequivocally manifested its understanding that the case had reached its end."); *Murphy*, 108 F.4th at 1273 (explaining how a timely filed postjudgment motion suspends the *substantive finality* of a judgment until it is resolved by the district court); *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243–44 (10th Cir. 2007) ("[A] motion asking a court to reconsider a final decision, upon which final judgment has been or should have been entered, generally arises in only one of two ways: (1) under Fed. R. Civ. P. 59 as a motion for a new trial or to alter or amend the judgment, if filed before or within ten days following entry of the judgment, or (2) under Fed. R. Civ. P. 60 as a motion for relief from judgment, if filed subsequent to the ten day period." (citation omitted)); Fed. R. Civ. P. 58(c) (explaining how a technical final judgment can exist without a judge ever entering a separate final judgment, provided 150 days have run from the entry in the civil docket). The Tenth Circuit has also observed, when considering what constitutes a final judgment, courts "place the greatest importance . . . on the intention of the trial judge." *U.S. v. Clearfield State Bank*, 497 F.2d 356, 358 (10th Cir. 1974) (determining the trial judge's order constituted a final judgment as it clearly evidenced an intention to dispose of all the issues before the court). Here, Judge Jenkins clearly intended to dispose of all issues before the court, as he found on all issues in favor of Plaintiff and believed his ruling "t[ook] care of the matter." *June Final Pretrial Conference* at 77:24–78:25.

[29] *Elephant Butte Irr. Dist. of N.M.*, 538 F.3d at 1306 ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge." (citation omitted)).

[30] Judge Jenkins did not resolve the issue of attorneys' fees, but this does not prevent a court's judgment from being final. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988) ("[A]n unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final.").

[31] *See June Final Pretrial Conference* at 77:24–78:25.

final judgment.[32]  His oral ruling therefore constituted a substantive final decree.  Defendants do not attempt to challenge Plaintiff's numerous arguments regarding the finality of the judgment,[33] and Defendants provide the court with no authority suggesting how it could justifiably depart from Judge Jenkins' ruling.[34]  Accordingly, the undersigned, as a successor judge of concurrent jurisdiction, must respect Judge Jenkins' final decree issued in June 2023, and the court declines to consider Defendants' other substantive arguments raised in their briefing.

## CONCLUSION

For the foregoing reasons, the court DENIES AS MOOT Plaintiff's Motion for Summary Judgment,[35] and the Clerk of Court is directed to close the case.  The court will concurrently enter a separate written judgment in accordance with Judge Jenkins' final decree.

SO ORDERED this 3rd day of January 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[32] *See Murphy*, 108 F.4th at 1273 (citing *Dodge v. Cotter Corp.*, 328 F.2d 1212, 1221 (10th Cir. 2003) for the proposition that a prejudgment interest is a portion of the damages and thus is an integral part of the merits decision that must be resolved before final judgment).

[33] *See, e.g.*, *Motion* at 1, 2, 6, 28–29.

[34] *See generally Opposition*.  When a party fails to respond to an issue raised by its opponent, the court is not required to do his work for him and dissect the opponent's plausible arguments.  *See Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (unpublished); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (explaining how it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," let alone for a party represented by counsel); *Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at *3 n.54 (D. Utah Oct. 24, 2024) (citing *Am. Waterways Operators v. Regan*, 590 F. Supp. 3d 126, 138 (D.D.C. 2022) for the proposition that when a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded).

[35] Dkt. 452.