IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARK BEESLEY, individually and in his capacity as Trustee for and on behalf of the MARK BEESLEY TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>GARY R. BRINTON, an individual; and ZIBALSTAR, L.C., a Utah limited liability company,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00735-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Mark Beesley's Motion for an Award of Attorney Fees and Nontaxable Costs.[1] Having reviewed the Motion and the relevant briefing, the court GRANTS IN PART Plaintiff's Motion.[2]

## BACKGROUND

This case arises out of an alleged breach of a Settlement Agreement entered into between Plaintiff and Defendant ZibalStar, L.C..[3] ZibalStar's obligations under the Settlement Agreement were guaranteed by Defendant Brinton pursuant to a separate, Guarantee Agreement.[4] Plaintiff brought the present action in July 2017, asserting claims for breach of the Settlement Agreement against Defendant ZibalStar and breach of the Guarantee Agreement

---

[1] Dkt. 491, *Motion for Award of Attorney Fees and Nontaxable Costs (Expenses)* (*Motion*).

[2] Pursuant to DUCivR 7-1(g), the court determines oral argument is unnecessary and will decide the Motion based upon the parties' written memoranda.

[3] *See* Dkt. 47, *Second Amended Complaint* ¶¶ 10–22.

[4] *Id.*

1

against Defendant Brinton.[5] Specifically, Plaintiff sought to recover the unpaid, final payment amount of $377,000 plus interest of 15% per annum until the full debt was paid, as provided in the Settlement Agreement.[6] Defendants admitted ZibalStar never made this final payment, as required by the contract,[7] and Defendants' only remaining defense to this nonpayment at the time of a June 2023 final pretrial conference was based on a theory of prior material breach.[8] More relevant here, the terms of the Settlement Agreement allow for recovery of "reasonable attorney fees and costs incurred in connection" with "any action . . . brought because of any breach of or to enforce, interpret, rescind, or terminate any of the provisions of" the Settlement Agreement.[9] Similarly, the terms of the Guarantee Agreement allow for recovery of "litigation costs and expenses, including reasonable attorney fees incurred in connection" with legal proceedings "relating to [a dispute of the Guarantee Agreement]."[10]

Judge Jenkins presided over this case until it was reassigned on November 20, 2023.[11] Over the course of several years, Judge Jenkins held multiple final pretrial conferences where he attempted to discern whether any legitimate issues of fact remained in the case to submit to a factfinder.[12] During the penultimate pretrial conference in April 2023, Judge Jenkins warned

---

[5] Dkt. 2, *Complaint* at 3–4.

[6] *Motion* at 1.

[7] *See, e.g.*, Dkt. 451-2, *Transcript of Motion Hearing Before the Honorable Judge Bruce S. Jenkins* (*June Final Pretrial Conference*) at 6:11–7:2, 28:6–13, 59:2–5 ("Payments have been made, Judge, just the last payment hasn't been made. I think we agree on that.").

[8] Dkt. 451-4, *January 12, 2023 Miscellaneous Hearing* at 13:4–9 ("Well, the issues are pretty simple in my mind. It's a contract case. It's a question of breach, who breached first. That's it. And with that in mind, let's fix a pretrial date, if that's convenient for everybody.").

[9] Dkt. 451-1, *Settlement Agreement* ¶ 17.

[10] Dkt. 47-2, *Personal Guarantee of Gary R. Brinton* (*Guarantee Agreement*).

[11] Dkt. 429, *Docket Text Order*.

[12] *See* Dkt. 375, *Minutes of The United States District Court for the District of Utah*; Dkt. 386, *Minutes of The United States District Court for the District of Utah*; Dkt. 397, *Minutes of The United States District Court for the District of Utah*; Dkt. 403, *Minutes of The United States District Court for the District of Utah*.

counsel for Defendants that he was prepared to issue a ruling at the next pretrial conference if they did not present him with something to try.[13] At the following (and final) pretrial conference in June 2023, Judge Jenkins enforced his prior warning. After hearing from the parties and asking repeatedly whether a legitimate factual basis for Defendants' defenses existed, he issued the following oral ruling:

> I've been trying to nail down what it was that we could legitimately refer to a factfinder. And I find there's not anything that I can identify with particularity that I can, in good conscience, refer to a factfinder. I think the issues, the facts, the acknowledged facts, the exhibits, and particularly the text of the settlement agreement, justify my finding the issues in favor of the plaintiff and against the defendants; namely, the unpaid sum of $377,000, along with, as pointed out, $155 a day times the days. The question of attorneys' fees and the quantum of attorneys' fees is for another day. . . . [Y]ou're entitled to costs, but if you claim attorneys' fees, you should file an appropriate application . . . I think that takes care of the matter.[14]

Fifty-seven days later, on August 22, 2023, Defendants filed a Motion for Summary Judgment challenging the court's subject matter jurisdiction.[15] Unfortunately, Judge Jenkins passed away shortly thereafter in November 2023. He passed away before resolving Defendants' Motion and before issuing a separate, written judgment pursuant to Federal Rule of Civil Procedure 58(a). The case was then transferred to Judge Parrish, who denied Defendants' Motion challenging the court's subject matter jurisdiction and invited the parties to submit additional briefing regarding whether summary judgment in favor of Plaintiff was appropriate.[16] Shortly thereafter, the case was transferred to the undersigned. After reviewing the parties' briefing, the undersigned determined he could not disturb Judge Jenkins' final decree resolving

---

[13] Dkt. 451-19, *April 20, 2023 Final Pretrial Conference* at 58:24–60:9.

[14] *June Final Pretrial Conference* at 77:24–78:25.

[15] Dkt. 412, *Motion for Summary Judgment Dismissal Based on Lack of Subject Matter Jurisdiction*.

[16] *See* Dkt. 439, *Memorandum Decision and Order Denying Motion for Summary Judgment and Motion to Stay*.

all issues in favor of Plaintiff.[17] Accordingly, the undersigned entered judgment in favor of Plaintiff and against Defendants ZibalStar and Brinton, jointly and severally, on Plaintiff's claims for Breach of the Settlement Agreement and Breach of the Guarantee Agreement in the amount of $377,000, plus prejudgment interest.[18] Plaintiff now seeks an award of attorney fees in the amount of $375,863.86[19] and taxable costs in the amount of $5,710.09 pursuant to the terms of the Settlement Agreement and Federal Rule of Civil Procedure 54(d).[20] The Motion is fully briefed and ripe for review.[21]

## ANALYSIS

A federal court sitting in diversity applies state law with respect to "the propriety of granting a fee award" and "how the amount of the fee is to be calculated[.]"[22] "And, 'it is state substantive law that cabins the meaning of reasonable' with respect to the amount of fees awarded."[23] Here, because this is a diversity action involving claims for breach of a valid

---

[17] *See* Dkt. 487, *Memorandum Decision and Order*.

[18] *See* Dkt. 488, *Judgment in a Civil Case*.

[19] *See* Dkt. 507, *Amended Reply Memorandum in Further Support of Motion for Award of Attorney Fees and Nontaxabble Costs (Expenses)* (*Reply*) at 4 ("[H]ere, the Motion seeks $375,863.86 in fees and nontaxable costs (expenses) and none were previously awarded[.]"). The court observes this requested amount of fees and nontaxable costs differs from the total amount of attorney fees and nontaxable costs disclosed in the billing records submitted in support of the Motion. Specifically, the billing records demonstrate a total of $375,863.86 in *attorney fees only* and $29,396.11 in nontaxable costs. *See* Dkt. 491-1, *Peters Scofield Billing Records* (*Billing Records*) at 133. But because Plaintiff requests an award only in the amount of $375,863.86, the court will not consider the possibility of an award of nontaxable costs.

[20] *See generally Motion*; Dkt. 490, *Bill of Costs*.

[21] *Motion*; Dkt. 502, *[Corrected] Response in Opposition to Motion for Attorney Fees and Costs* (*Opposition*); *Reply*.

[22] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 462 (10th Cir. 2017) (citation omitted).

[23] *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1241 (10th Cir. 2018) (citation omitted).

4

contract with a Utah choice-of-law provision, Utah law governs the issue of whether to award Plaintiff attorney fees.[24]

"In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award."[25] Utah courts, like federal courts, have discretion to determine whether to grant a fee award.[26] And under Utah law, while "[a] trial court may . . . select, according to the factually varied context of each particular case, the factors that are most relevant to its fee calculation—[] select them it must."[27] Indeed, "[t]he court cannot properly evaluate a claim for fees without measuring the request against at least some established touchstones."[28]

There appears to be at least four "established touchstones" under Utah law to measure a party's potential entitlement to fees. First, "[a] party is . . . entitled only to those fees resulting from its principal cause of action for which there is a contractual (or statutory) obligation for attorney's fees."[29] Second and relatedly, Utah law allows an award of attorney fees "only to a

---

[24] When exercising diversity jurisdiction, the court applies the forum state's choice of law rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941). This includes the forum state's rule as to whether a contractual "choice-of-law" provision is enforceable. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1360 (10th Cir.1990). Utah clearly enforces choice-of-law provisions in valid contracts. *See, e.g.*, *Federated Cap. Corp. v. Libby*, 384 P.3d 221, 226 (Utah 2016). Thus, Utah law governs the issue of attorney fees.

[25] *Utahns For Better Dental Health-Davis, Inc. v. Davis Cnty. Clerk*, 175 P.3d 1036, 1038 (Utah 2007) (citation omitted); *see also* Utah Code § 78B-5-826 (allowing for the recovery of costs and attorney fees "to either party that prevails in a civil action based upon any . . . written contract . . . executed after April 28, 1986, when the provisions of the . . . written contract . . . allow at least one party to recover attorney fees").

[26] *See Dale K. Barker Co., PC v. John K. Bushnell*, 237 P.3d 903, 907 (Utah Ct. App. 2010); *Xlear, Inc.*, 893 F.3d at 1233 (citation omitted).

[27] *Foote v. Clark*, 962 P.2d 52, 56–57 (Utah 1998).

[28] *Id.* at 57.

[29] *Xlear, Inc.*, 893 F.3d at 1242 (citing *Utah Farm Prod. Credit Ass'n v. Cox*, 627 P.2d 62, 66 (Utah 1981)).

prevailing party."[30]  When either of these first two touchstones are at issue, a party seeking fees must allocate its fee request according to its underlying claims.[31]  Specifically,

> the party must categorize the time and fees expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees."[32]

Third, "[t]he trial court . . . must make an independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions."[33]  And fourth, Utah law requires that "an award of attorney fees . . . be supported by evidence in the record."[34]

Here, Plaintiff, as the prevailing party in this action on all claims, seeks an award of all "reasonable attorney fees and costs incurred [by him] in connection with [this] action" pursuant to the terms of the parties' Settlement Agreement.[35]  Defendants present a myriad of objections in response, including legal, factual, procedural, and evidentiary objections.[36]  It is undisputed Plaintiff is the prevailing party in this action as Plaintiff succeeded on all claims against Defendants; therefore, Plaintiff is entitled to taxable costs in the amount of $5,710.09 in

---

[30] *Mitchell v. ReconTrust Co. NA*, 373 P.3d 189, 206 (Utah App. 2016) (quoting *Doctors' Co. v. Drezga*, 218 P.3d 598, 607 (Utah 2009)).

[31] *Xlear, Inc.*, 893 F.3d at 1239 (citing *Foote*, 962 P.2d at 55).

[32] *Id.* (citing *Foote*, 962 P.2d at 55).

[33] *Dale K. Barker Co., PC*, 237 P.3d at 908 (citation omitted).

[34] *Xlear, Inc.*, 893 F.3d at 1241 (citing *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988)).

[35] *Motion* at 2 (referencing *Settlement Agreement* at 5).

[36] *See generally Opposition*.  For context, Plaintiff incorrectly cites Utah Rule of Civil Procedure 73—the Utah procedural rule governing the timing, contents, and other procedural aspects of motions for attorney fees in Utah state court—as the standard governing the resolution of the Motion.  *See Motion* at 7.  Defendants also mistakenly argue Rule 73 governs, and many of Defendants arguments center on the Motion's procedural deficiencies under Rule 73.  *See, e.g.*, *Opposition* at 2 ("The motion for attorney fees is itself a loser as it violates nearly every Utah R. Civ. P. 73 mandate for the contents of a motion and supporting declaration."); *id.* at 6 ("It would have been impossible for [Plaintiff] to have violated Rule 73 more thoroughly.").  Rule 73's requirements have no bearing on this diversity action in federal court.  Indeed, Utah law governs only "the propriety of granting a fee award" and "how the amount of the fee is to be calculated[.]"  *Chieftain Royalty Co.*, 888 F.3d at 462 (citation omitted).  Accordingly, the court will disregard the parties' Rule-73-specific arguments and will instead focus on the propriety and the amount of the award under Utah substantive law.

accordance with Federal Rule of Civil Procedure 54(d), and there is no need for Plaintiff to categorize his outstanding fee request among successful and unsuccessful claims. Moreover, all of Plaintiffs' claims relate to enforcement of the Settlement Agreement and Guarantee Agreement, and these agreements both allow for the recovery of fees and costs.[37] Thus, there is no need for Plaintiff to categorize the time and fees expended for claims for which there is no possible entitlement to fees. At bottom, the only genuine issue before the court is related to its "independent evaluation of the reasonableness of the requested fees in light of the parties' evidentiary submissions,"[38] and whether the "award of attorney fees . . . [is] supported by evidence in the record."[39] The court analyzes each touchstone in turn.

### I. The Reasonableness of Plaintiff's Requested Fees

What constitutes a reasonable fee under Utah law "is not necessarily controlled by any set formula,"[40] though it often depends upon "the amount in controversy, the extent of services rendered . . . the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the overall result achieved and the necessity of initiating a lawsuit to vindicate the rights under the contract."[41] Other related reasonableness factors include:

> [T]he difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the

---

[37] *Settlement Agreement* ¶ 17; *Guarantee Agreement* ¶ 2.

[38] *Dale K. Barker Co., PC*, 237 P.3d at 908 (citation omitted).

[39] *Xlear, Inc.*, 893 F.3d at 1241 (citing *Dixie State Bank*, 764 P.2d at 988).

[40] *Dixie State Bank*, 764 P.2d at 989 (citation omitted).

[41] *Id.* (internal quotation marks and citations omitted).

case and the result attained, and the expertise and experience of the attorneys involved.[42]

Here, Plaintiff describes this action as "a simple collection action," where a seller of limited liability company interests sought to recover an "admittedly unpaid final payment"[43] of $377,000 as required by the terms of the Settlement Agreement.[44] Counsel for Plaintiff admitted he would ordinarily expect a fee range between $50,000 and $125,000 in a similar commercial collection action.[45] However, because "Defendants raised a multitude of legal issues that they supported with an astounding range of factual assertions," Plaintiff's counsel was required to dedicate a substantial amount of time to this case.[46] Indeed, Plaintiff's counsel insists the "defenses and counterclaims filed by [D]efendants exceeded anything close to what one would expect in an ordinary collection case."[47] Ultimately, Plaintiff's counsel argues the total amount of fees incurred is in all respects reasonable, given the effect on the billable time needed to end the litigation almost eight years after it commenced.[48] Defendants do not dispute these arguments, but they primarily challenge Plaintiff's failure to categorize and allocate its fee request among activities attributable and not attributable to the successful vindication of Plaintiff's contractual rights, which will be discussed in greater detail below.[49]

---

[42] *Id.* (citation omitted).

[43] *Motion* at 2.

[44] *Id.* at 2–4.

[45] *Id.* at 5 (citing Dkt. 492, *Declaration of David W. Scofield* (*Scofield Decl.*) ¶ 18).

[46] *Scofield Decl.* ¶ 19.

[47] *Id.* ¶ 24.

[48] *Id.* ¶ 17.

[49] *See Motion* at 8–9.

The court is persuaded by Plaintiff's arguments that Defendants' litigation approach makes the amount of attorney time expended by Plaintiff more reasonable.[50]  A review of the docket confirms Defendants' difficult litigation practices.  For example, in response to Plaintiff's nine-page Amended Complaint,[51] which asserted only two causes of action,[52] Defendants filed two Motions to Dismiss[53] and a thirty-two page Answer, which asserted thirty affirmative defenses, five counterclaims, and a third-party claim.[54]  Defendants later filed three Motions for Summary Judgment based on theories of prior material breach, lack of consideration, breach of contract, and breach of the implied covenant of good faith and fair dealing.[55]  After those Motions were denied, Defendants filed another Motion to Dismiss based on the doctrine of Judicial Estoppel,[56] and another Motion for Summary Judgment based on lack of subject matter jurisdiction.[57]  And it was only after months of pretrial conferences and months of Judge Jenkins attempting to "nail down" anything that "could legitimately" be referred "to a factfinder" that Plaintiff was able to vindicate his contractual rights to payment.[58]  Tellingly, counsel for Defendants have represented repeatedly that if they prevailed, they would "seek in excess of $3

---

[50] *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998).

[51] Dkt. 32, *Amended Complaint*; Dkt. 47, *Second Amended Complaint*.

[52] *See* Dkt. 2, *Complaint*.

[53] *See* Dkt. 22, *Motion to Dismiss*; Dkt. 35, *Motion to Dismiss First Amended Complaint*.

[54] *See generally* Dkt. 54, *First Amended Answer to Second Amended Complaint; Counterclaims and Third-Party Complaint*.

[55] Dkt. 130, *Defendant Brinton's Motion and Supporting Memorandum for Summary Judgment on Guaranty Agreement*; Dkt. 140, *ZibalStar, L.C.'s Motion for Partial Summary Judgment against the Mark Beesley Trust and Supporting Memorandum re: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing*; Dkt. 141, *[Corrected] ZibalStar, L.C. and Gary R. Brinton's Motion for Summary Judgment and Supporting Memorandum re: Initial Breach and Failure of Consideration*.

[56] Dkt. 210, *ZibalStar, L.C. and Gary Brinton's Motion to Dismiss re: Judicial Estoppel*.

[57] Dkt. 412, *Motion for Summary Judgment Dismissal Based on Lack of Subject Matter Jurisdiction*.

[58] *June Final Pretrial Conference* at 77:24–78:25.

million in attorney fees and costs" for the substantial amount of time they spent litigating this case.[59]

Other factors also weigh in favor of reasonableness. First, the timing of Judge Jenkins' passing led to unique procedural challenges regarding the finality of the judgment.[60] Plaintiff's extra billings and filings in light of this unique situation are understandable. Second, Plaintiff's manner of litigation appears to be reasonable as he succeeded on all asserted claims, and a lawsuit was necessary to vindicate his contractual rights. Third, Plaintiff selected effective and efficient counsel. Plaintiff's counsel has over 41 years of experience, and his practice focuses primarily on commercial litigation.[61] He is the author of the Trial Handbook for Utah Lawyers, he has served on the Utah Supreme Court's Advisory Committee on the Rules of Civil Procedure, and he has handled hundreds of litigation cases in his career.[62] He has received numerous ratings and recognitions, which recognize him as one with professional competence, experience, and integrity.[63] Considering these circumstances, Plaintiff's claimed fee is largely reasonable.

However, Utah law clarifies that "[i]f attorney fees are recoverable by contract, a party is entitled only to those fees attributable to the successful vindication of contractual rights."[64] And under Utah law, fees incurred on unsuccessful motions that do "not actually lead to a vindication

---

[59] *See* Dkts. 236, 240, 255, 402.

[60] *See, e.g.*, Dkt. 439, *Memorandum Decision and Order Denying Motion for Summary Judgment and Motion to Stay*.

[61] *Scofield Decl.* ¶¶ 2–6.

[62] *Id.* ¶¶ 7–9.

[63] *Id.* (citation omitted).

[64] *Gilbert Dev. Corp. v. Wardley Corp.*, 246 P.3d 131, 148 (Utah Ct. App. 2010) (citation omitted).

10

of [a party's] rights under [a contract]" are not recoverable.[65] Here, Defendants list six categories of fees that are arguably not attributable to successful vindication of Plaintiff's contractual rights: fees related to (1) a failed mediation; (2) a failed short form discovery motion; (3) efforts to depose and bolster the credibility of Ted Hansen; (4) several denied Motions in Limine; (5) an unused "Findings of Fact and Conclusions of Law"; and (6) a mooted Motion for Summary Judgment.[66] Plaintiff does not dispute many of Defendants' arguments on this subject; instead, he primarily challenges the accuracy of Defendants' calculations of the fees attributable to a few of the categories.[67] But Plaintiff, as the party bearing the burden of establishing his entitlement to an award of fees,[68] should have explained how these challenged fees led to the vindication of his contractual rights. By failing to contest these arguments, Plaintiff has implicitly conceded these categories of fees did not go to the vindication of his contractual rights.[69]

---

[65] *Id.*; *see also Cach Cnty. v. Beus*, 128 P.3d 63, 69 (Utah Ct. App. 2005) (explaining how "[a] party is entitled only to those fees attributable to the *successful* vindication of contractual rights" (alteration and emphasis in original) (internal quotation marks and citation omitted)); *Stacey Props. v. Wixen,* 766 P.2d 1080, 1084 (Utah Ct. App. 1988) (same); *ProMax Dev. Corp. v. Raile,* 998 P.2d 254, 261 (Utah 2000) (awarding fees to defendants as the "successful party" in the trial court and on appeal, but denying fees accrued in pursuing an unsuccessful motion to dismiss); *Valcarce v. Fitzgerald,* 961 P.2d 305, 318 (Utah 1998) (holding that the trial court erred in awarding a defendant and certain intervenors the full amount of their requested attorney fees without recognizing that some of the time charged by their counsel was spent on unsuccessful issues); *Paul Mueller Co. v. Cache Valley Dairy Ass'n*, 657 P.2d 1279, 1288 (Utah 1982) ("Because the counterclaim was unsuccessful, the hours spent in the prosecution thereof are noncompensable.").

[66] *Opposition* at 10.

[67] *See Reply* at 9 ("Exhibit D is rife with error.").

[68] *See Dale K. Barker Co.*, 237 P.3d at 907 (citation omitted).

[69] *See Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at *3 n.54 (D. Utah Oct. 24, 2024) (gathering citations supporting the proposition that the failure to contest an argument implies concession of that argument); *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with 'legal authority or argument.'") (quoting *Clark v. State Farm Mut. Auto. Ins. Co.,* 319 F.3d 1234, 1244 (10th Cir. 2003)).

Indeed, Plaintiff first contends any given time entry may include work on multiple different issues, but Defendants have lumped all work in any entry into one basket.[70] But, as will be explained in greater detail below, it was Plaintiff's burden—not Defendants'—to support his fee request with sufficiently clear evidence and exhibits. Plaintiff also argues that "[d]uring the course of mediation[,] both parties can learn many facts about an adversary's position on the law, facts, financial responsibility, case strengths and weaknesses, even adversary personality and propensities—all of which are important for case preparation and strategy determinations."[71] This may be true generally, but the court is still left guessing as to whether the mediation in this case provided Plaintiff with such critical insights. Plaintiff finally argues a reasonable attorney would have made the Motions in Limine, and the court's pretrial determinations "may be grounded in them."[72] Again, this may be the case generally, but Plaintiff clearly has not carried his burden to demonstrate reasonableness with respect to these fees when he presents no case-specific arguments to show how the Motions in Limine assisted in the vindication of his contractual rights. However, the court recognizes that many of these challenged fees were incurred in direct response to court orders; specifically, the fees related to Plaintiff's Proposed Findings of Fact and Conclusions of Law[73] and the fees related to the undecided Motion for

---

[70] *Reply* at 8.

[71] *Id.* at 9.

[72] *Id.* at 10.

[73] Dkt. 417-1, *Findings of Fact and Conclusions of Law*.

Summary Judgment.[74] The court therefore concludes these fees were necessary for the ultimate resolution and vindication of Plaintiff's contractual rights.

Ultimately, the court reduces the fee award by $2,765 for time spent on the failed mediation, $2,645[75] for time spent on the short form discovery motion, $665 for the issues related to Ted Hansen's testimony, and $83,012.50 for time spent on the Motions in Limine.

## II.     The Sufficiency of the Evidence Supporting Plaintiff's Fee Award

Utah law requires that "an award of attorney fees . . . be supported by evidence in the record."[76] "Except in the most simple cases, the evidence should include the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work."[77] Moreover, the evidence should enable the district court to make the following determinations: (1) what legal work was actually performed; (2) how much of the work performed was reasonably necessary to adequately prosecute or defend the matter; (3) whether the attorney's billing rate is consistent with the rates customarily charged in the locality for

---

[74] Dkt. 452, *Motion for Summary Judgment*. Plaintiff prepared the proposed "Findings of Fact and Conclusions of Law" in response to Judge Jenkins' directive to prepare a "suggested form of findings and conclusions" after announcing his oral ruling at the final pretrial conference. *June Final Pretrial Conference* at 78. And Plaintiff prepared the mooted Summary Judgment Motion in response to Judge Parrish's invitation to submit additional "briefing on whether summary judgment is appropriate." Dkt. 439, *Memorandum Decision and Order Denying Motion for Summary Judgment and Motion to Stay* at 8.

[75] *See* Dkt. 502-4, *Exhibit D*. Defendants' Exhibit D appears to erroneously seek only $3,275 instead of the total $4,320 in fees related to the short form discovery motion. *Id.* Moreover, Defendants erroneously count the same entry of $630 twice: once in the failed mediation category and again in the short form discovery category. *Id.* The court therefore takes Defendants at their word that they seek to reduce the fee award by only $3,275 with respect to the short form discovery category, and the court reduces this request by the double-counted amount of $630 for a net total of $2,645. *Id.*

[76] *Xlear, Inc.*, 893 F.3d at 1241 (citing *Dixie State Bank*, 764 P.2d at 988).

[77] *Id.* (citing *U.S.A. United Staffing All., LLC v. Workers' Comp. Fund*, 213 P.3d 20, 30 (Utah Ct. App. 2009)).

13

similar services; and (4) whether there are circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility.[78]

Here, the evidentiary submissions by Plaintiff in support of his Motion enables the court to conclude the attorney's billing rate is consistent with the rates customarily charged in the locality for similar services,[79] and there are no circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility. However, the court agrees with Defendants that several, entirely redacted entries do not enable the district court to determine what legal work was actually performed and how much of the work was reasonably necessary to adequately prosecute the matter.[80] The total amount incurred in relation to these entries is $10,857;[81] therefore, the court reduces the fee award by that amount.

But the court is not persuaded by Defendants' remaining arguments. First, the court disagrees with Defendants' allegations that certain time entries are "excessive" in light of work performed or contain "nondescript communications."[82] Instead, the court finds the entries are sufficiently clear and reasonable to enable the court to understand the legal work actually performed and that the work was reasonably necessary to adequately prosecute the matter. Second, the court finds it has competent, admissible evidence upon which to make its findings and conclusions related to reasonableness.[83] Mr. Scofield, as Plaintiff's attorney, has personal knowledge of and is competent to testify about the reasonableness of his fee and the necessity of work undertaken. His declaration constitutes admissible evidence, and it properly authenticates

---

[78] *Id.* at 1241–42 (citing *Dixie State Bank*, 764 P.2d at 990).

[79] *See Scofield Decl.* ¶¶ 13–17.

[80] *Opposition* at 5–6.

[81] Dkt. 502-1, *Exhibit A*.

[82] Dkt. 502-2, *Exhibit B*; Dkt. 502-3, *Exhibit C*.

[83] *Opposition* at 6.

14

the billing records. And the billing records themselves are admissible hearsay evidence as records of a regularly conducted activity.[84] Third, Plaintiff's references to the Settlement Agreement do not violate the Best Evidence Rule as the parties have already introduced numerous, original copies of the Settlement Agreement in this case.[85]

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Plaintiff's Motion for Attorney Fees.[86] Plaintiff, as the prevailing party, is entitled to costs in the amount of $5,710.09 pursuant to Federal Rule of Civil Procedure 54(d).[87] Plaintiff is also entitled to a total attorney fee award of $275,919.36, calculated by taking the total requested amount of $375,863.86[88] and subtracting $2,765 for time spent on the failed mediation, $2,645 for time spent on the short form discovery motion, $665 for the issues related to Ted Hansen's testimony, $83,012.50 for time spent on the Motions in Limine, and $10,857[89] for having completely redacted various time entries.

---

[84] *See* Fed. R. Evid. 803(6).

[85] *See, e.g.*, Dkt. 2-1, *Settlement Agreement*; Dkt. 32-1, *Settlement Agreement*; Dkt. 35, *Settlement Agreement*; Dkt. 45-1, *Settlement Agreement*; Dkt. 451-1, *Settlement Agreement*; Dkt. 425-2, *Settlement Agreement*; *see also* Fed. R. Evid. 1002; *United States v. Chavez*, 976 F.3d 1178, 1202 (10th Cir. 2020) ("[I]t is more accurate to refer to Rule 1002 as the 'original document rule,' not the 'best evidence rule.'" (citation omitted)).

[86] Dkt. 491.

[87] *See* Dkt. 490, *Bill of Costs*.

[88] *Reply* at 4. Again, the court observes this requested amount of fees differs from the total amount of attorney fees and nontaxable costs disclosed in the billing records submitted in support of the Motion. Specifically, the billing records demonstrate a total of $375,863.86 in *attorney fees only* and $29,396.11 in nontaxable costs. *See Billing Records* at 133. But because Plaintiff requests an award only in the amount of $375,863.86, the court will not consider the possibility of an award of nontaxable costs.

[89] *Exhibit A*.

SO ORDERED this 17th day of April 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge
